# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEVIN SHAW, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | <u>JURY TRIAL DEMANDED</u> |
| AMERICAN TEXTILE COMPANY, INC.<br>Defendant. | |

## NATURE OF THE ACTION

1. This is a putative class action lawsuit on behalf of purchasers of Defendant's Sealy-brand 1250 thread count bedding and linen products.

2. Independent testing shows that Defendant's products are made with a thread count of 286, not 1250. The test results are attached as **Exhibit A**. Hence, the products are falsely labeled and falsely advertised.

3. Defendant's standard business practice is to use a non-industry standard method for counting threads that it knows will result in a vastly inflated thread count, which in turn, will attract purchasers. So, all Sealy sheets are mislabeled with respect to thread count.

4. Defendant's false representations about the thread count of the Sealy products have the tendency or capacity to deceive or confuse reasonable consumers. Plaintiff and Class Members would not have purchased Defendant's Sealy products – or would not have paid as much as they did to purchase them – had they known that they were not in fact the thread count represented. Plaintiff and Class Members suffered monetary damages as a result of Defendant's deceptive and false representations.

## PARTIES

5. Plaintiff Kevin Shaw is domiciled in New York, residing in Bronx, New York. In, or around, July 2023, Plaintiff purchased a pack of Sealy 1250 thread count bed sheets from a Macy's store located in New York state. Before purchasing the product, Plaintiff reviewed the product's labeling and packaging and saw that the product was labeled and marketed as "1250 thread count bed sheets," and he believed that representation to be true. Plaintiff relied on that labeling and packaging to choose the Sealy products over comparable products. If Plaintiff had known that the Sealy product was falsely labeled, he would not have purchased it or would have paid a lower amount.

6. American Textile Company, Inc. ("AMC") is a corporation incorporated in the state of Pennsylvania with its principal executive office located in Duquesne, Pennsylvania.

2

AMC manufactures, sells, and/or distributes Sealy-brand products, and is responsible for the advertising, marketing, trade dress, and packaging of the Sealy products at issue here.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and Plaintiff, as well as most members of the proposed class, are citizens of states different from Defendant.

8. This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself of the laws and benefits of doing business in New York, and Plaintiff claims arise out of each of the Defendants' forum-related activities including the sale, marketing, and advertising of the Sealy Products.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant does substantial business in this District and a substantial part of the events giving rise to Plaintiff's claims took place within this District.

## FACTUAL ALLEGATIONS

10. **Products at issue**: Defendant manufactures, distributes, advertises, and sells Sealy-brand 1250 thread count sheets and pillowcases. With respect to thread count, packaging, and the misrepresentations at issue here, all of the products are substantially similar.

11. **Relevant time period**: The misrepresentation at issue here was consistently made at all times during the last four years, at least.

12. **Misrepresentation at issue**: For all of the products at issue, Defendant misrepresents on the front labeling that the product has a thread count of 1250. The true thread count is closer to 286, or even lower.

13. There have been no material changes to the product packaging during the relevant time period. In particular, the Sealy products have consistently been labeled and advertised with

the words "1250 THREAD COUNT" prominently displayed on the front packaging. As a result, Plaintiff and all class members were exposed to the misrepresentation at issue here.

14. Defendant intends that consumers will read and rely on the thread count claims made in Defendant's advertising and labeling. Thread count is material to consumers, as shown by the fact that the feature is prominently displayed on the front package of every product.

15. **Why/How The Statements At Issue Here Have The Tendency Or Capacity To Deceive Or Confuse Reasonable Consumers**: Consumers purchasing bedding and linens use a product's thread count as an indication of fabric quality and durability. Thread count is material and informs purchasing decisions. Generally, the higher the thread count, the higher the price for that product will be.

16. Defendant knows that consumers will pay higher prices for bedding and linen products with a higher thread count because of the purported higher quality.

17. Thread count is the number of vertical and horizontal threads (warp and [filling]) in one square inch of fabric. The industry standard for measuring thread counts is based on the American Society for Testing and Materials' ("ASTM") Standard Test Method for Warp (End) Count and Filling (Pick) Count of Woven Fabric, Designation: D3775 (applicable to all woven fabrics). This standard requires that individual warp ends and filling picks are counted as "single units regardless of whether they are comprised of single or plied components" per D3775.

18. The decades-long industry practice in the United States for thread counting has been to "count the number of threads in both the warp and filling directions" and to count plied yarns as "one yarn, regardless of whether the yarn was a single ply or multi-ply yarn. (A multi-ply yarn is one yarn that has been created by twisting two or more yarns together.)"[1]

---

[1] Letter from James Kohm, Assoc. Dir. for Enf't Bureau of Consumer Prot., FTC, to E. Linwood Wright, III, Chairman of the Textile Bedding Comm. of the Nat'l Textile Ass'n (Aug. 2, 2005) https://www.ftc.gov/sites/default/files/documents/advisory_opinions/national-textile-association/natltextileassn.pdf

19.     However, Defendant began using non-industry standard methods for counting threads so that it could artificially multiply the thread count to a number that is far higher than what would be measured using traditional industry standards.

20.     In a letter to the National Textiles Association ("NTA"), the Federal Trade Commission ("FTC") stated that this non-industry standard practice of measuring thread count "created confusion in the marketplace and has caused consumers to compare thread counts that may have been calculated in two dramatically different ways." The FTC also stated that "consumers could be deceived or misled by the practice of stating an inflated thread count, achieved by multiplying the actual count by the number of plies within the yarn."

21.     The practice of counting the plies that make up each thread was also condemned by the American Textile Manufacturer's Institute ("ATMI"). In a letter sent to the FTC on January 31, 2002, ATMI addressed marketing of bed sheets and pillowcases to consumers with claims of extremely high yarn or thread count claims, stating that:

> Labeling these products based on a count that includes each ply in plied yarns deceives the customer into believing that bedding products with higher counts are better, when, in fact, they might be inferior because of the method used to determine the count.
>
> ...
>
> In many cases, these extremely high counts are achieved by counting yarns within a ply as individual yarns, thus dramatically increasing the number of yarns in a square inch of fabric. A plied yarn is one in which two or more yarns are twisted together to form a single strand.
>
> ATMI believes this method of labeling products based on counting each individual yarn in plies to be a deceptive practice, which misleads the American public into making purchasing decisions to purchase items, based on false and misleading information.
>
> ASTM method D 3775-96 (Standard Test Method for Fabric Count of Woven Fabric) [a prior version of D3775-12] the long-accepted industry standard for determining count. This method has been in use in this country for many years and serves as the industry's standard way to report the count of many woven textile fabrics, including sheeting. It is based on the number of yarns in the warp direction and filling direction, regardless of ply, and has become an important parameter used by consumers to judge the quality of sheeting products, since the higher the count, the more luxurious the product.

> ATMI believes that any information provided to the consumer should be true and correct so as not to be deceptive or misleading. We believe that plied yarns are properly counted as only one yarn. For example, a fabric containing 250 individual four ply yarns in a square inch would be described as a "250 thread count fabric, even though each thread or yarn contained four plies twisted together." **It would be false and misleading to describe this as a 1000 thread count product**.

22. Despite knowing the long-standing industry standards, Defendant deviated from the traditional thread counting standards to mislead consumers. Defendant's Sealy products are advertised with inflated thread counts.

23. Defendant knew that its method of calculating the thread count was misleading. By representing that its products had higher thread counts than the Sealy products had, Defendant unjustly profited from the sale of such bedding and linen products to consumers. Because of Defendant's inflated thread counts, Plaintiff and other Class Members purchased products they would not have otherwise purchased, or that they would have paid a lower price for had they know the actual thread counts at the time of purchase.

## CLASS ALLEGATIONS

24. Plaintiff seeks to represent a class defined as all people in the United States who purchased any Sealy product that represents the product as having a thread count of 1250 during the applicable statute of limitations (the "Class").

25. Plaintiff also seeks to represent a subclass consisting of Class Members who reside in New York (the "Subclass").

26. Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Class and Subclass may be expanded or narrowed, including through the use of multi-state subclasses to account for material differences in state law, if any.

27. **Numerosity.** The Class and Subclass Members are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiff reasonably estimate that there are hundreds of thousands of Members in the Class and in the Subclass. Although the precise number of Class and Subclass

6

Members is unknown to Plaintiff, it is known by Defendant and may be determined through discovery.

28. **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all Members of the Class and Subclass and predominate over any questions affecting only individual Class or Subclass members. These common legal and factual questions include, but are not limited to, the following:

(a) Whether Defendant made false and/or misleading statements to the consuming public concerning the Thread Count Claims on the Sealy Products;

(b) Whether Defendant omitted material information to the consuming public concerning the Thread Count Claims on the Sealy Products;

(c) Whether Defendant's labeling and packaging for the Sealy Products is misleading and/or deceptive;

(d) Whether Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising and sale of the Sealy Products;

(e) Whether Defendant's representations concerning the Sealy Products were likely to deceive a reasonable consumer;

(f) Whether Defendant's omissions concerning the Sealy Products were likely to deceive a reasonable consumer;

(g) Whether Defendant represented to consumers that the Sealy Products have characteristics or qualities they do not have;

(h) Whether Defendant advertised the Sealy Products with the intent to sell it not as advertised;

(i) Whether Defendant made and breached express and/or implied warranties to Plaintiff and Class and Subclass Members about the Sealy Products;

(j) Whether Defendant's representations, omissions, and/or breaches caused injury to Plaintiff and Class and Subclass Members; and

(k) Whether Plaintiff and Class and Subclass Members are entitled to damages.

29. **Typicality.** Plaintiff's claims are typical of the claims of the other Members of the Class and Subclass in that, among other things, all Class and Subclass Members were deceived (or reasonably likely to be deceived) in the same way by Defendant's false and misleading claims about the purported thread count of the Sealy Products. All Class and Subclass Members were comparably injured by Defendant's wrongful conduct as set forth herein. Further, there are no defenses available to Defendant that are unique to Plaintiff.

30. **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the Members of the Class and Subclass. Plaintiff retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class and Subclass. Furthermore, Plaintiff has no interests that are antagonistic to those of the Class or Subclass.

31. **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class and Subclass Members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant. It would, thus, be virtually impossible for Class or Subclass Members to obtain effective redress on an individual basis for the wrongs committed against them. Even if Class or Subclass Members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. It would also increase the delay and expense to all parties and the court system from the issues raised by this action. The class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

32. In the alternative, the Class and Subclass may also be certified because:
    (a) the prosecution of separate actions by individual Class and Subclass Members would create a risk of inconsistent or varying adjudications with respect to

individual Class or Subclass Members that would establish incompatible standards of conduct for Defendant;

(b) the prosecution of separate actions by individual Class and Subclass Members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class and Subclass Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or Defendant has acted or refused to act on grounds generally applicable to the Class and to the Subclass as a whole, thereby making appropriate final declaratory relief with respect to the Members of the Class and to the Members of the Subclass as a whole.

## COUNT I
### Fraud
**(On Behalf Of The Class And Subclass)**

33. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

34. Plaintiff brings this claim individually and on behalf of members of the Class and putative Subclass.

35. As discussed above, Defendant misrepresented that Sealy Products have a thread count of 1250.

36. The false and misleading representations were made with knowledge of their falsehood.

37. The false and misleading representations were made by Defendant, upon which Plaintiff and members of the Class and Subclass reasonably and justifiably relied and were intended to induce and actually induced Plaintiff and Class members to purchase Sealy Products.

38. The fraudulent actions of defendant caused damage to Plaintiff and members of the Class, who are entitled to damages as a result.

## COUNT II
## Violation Of New York Gen. Bus. Law § 349

39. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

40. Plaintiff brings this claim individually and on behalf of members of the Class and putative Subclass.

41. As discussed above, Defendant misrepresented that Sealy Products have a thread count of 1250.

42. By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices for the purpose of generating retail sales which could and did increase the amount of wholesale sales to Defendants.

43. The foregoing deceptive acts and practices were directed at consumers.

44. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and benefits of the products at issue to induce consumers to purchase them.

45. Plaintiff and members of the Class and Subclass were injured and harmed because they would not have purchased the products at issue if the products had been accurately labeled and class members paid a substantial price premium based on the misrepresentations.

46. As a result of Defendant's deceptive statements and representations of fact, Plaintiff and class members suffered economic injury.

47. Plaintiff and class members suffered an ascertainable loss caused by Defendant's misrepresentations.

48. Plaintiff seeks all available relief under § 349.

## COUNT III
## Violation Of New York Gen. Bus. Law § 350

49. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

50. Plaintiff brings this claim individually and on behalf of members of the Class and putative Subclass.

51. As discussed above, Defendant misrepresented that Sealy Products have a thread count of 1250.

52. By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices for the purpose of generating retail sales which could and did increase the amount of wholesale sales to Defendants.

53. The foregoing deceptive acts and practices were directed at consumers.

54. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and benefits of the products at issue to induce consumers to purchase them.

55. Plaintiff and members of the Class and Subclass were injured and harmed because they would not have purchased the products at issue if the products had been accurately labeled and class members paid a substantial price premium based on the misrepresentations.

56. As a result of Defendant's deceptive statements and representations of fact, Plaintiff and class members suffered economic injury.

57. Plaintiff and class members suffered an ascertainable loss caused by Defendant's misrepresentations.

58. Plaintiff seeks all available relief under § 350.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Class and the Subclass under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as the representative of the Class and Subclass, and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass members;

(b) For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiff, the Class, and the Subclass on all counts asserted herein;

(d) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest in all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief, including non-restitutionary disgorgement;

(g) For an order awarding Plaintiff and the Class and Subclass their reasonable attorney's fees and expenses and costs of suit.

**JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: November 20, 2023          **BURSOR & FISHER, P.A**.

By: ___*/s/ Alec M. Leslie*___
      Alec M. Leslie

Alec M. Leslie
1330 Avenue of the Americas
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: aleslie@bursor.com

                Joel D. Smith (pro hac vice forthcoming)
                Brittany S. Scott (pro hac vice forthcoming)
                1990 North California Blvd., Suite 940
                Walnut Creek, CA 94596
                Telephone: (925) 300-4455
                Facsimile:  (925) 407-2700
                E-mail: jsmith@bursor.com
                        bscott@bursor.com

*Attorneys for Plaintiff*

**EXHIBIT A**



**Quality Assurance & Compliance Testing**
**Utilizing Textile & Related Technologies**

19 West 36th Street, 10th Floor
New York, NY 10018
Tel: 212 947 8391   Fax: 212 947 8719

www.vartest.com

# ISO/IEC 17025 Third Party Test Report

| | | | |
|---|---|---|---|
| DATE: | March 15, 2023 | FILE: | BURFIS.A030923E |
| CLIENT: | Bursor & Fisher, P.A.<br>1990 N. California Blvd., Suite 940<br>Walnut Creek, CA 94596 | ATTN: | Alex Riggsby |

SAMPLE IDENTIFIED BY CLIENT AS:

Sheet Set Submitted
Manufacturer: Sealy
Style: Premium Comfort Sheet Set, Queen
Lot #: 22415 34250, Ref: 1250 tc
Color Bright White

**TEST PROCEDURES:**

FABRIC COUNT
(ASTM D3775):

COMMENT:

THREAD COUNT
(ASTM D3775):

**TEST RESULTS:**

170 ends/" x 116 picks/" average

Test performed on pillowcase.
Filling yarn is a continuous filament. The filament yarn unit, in the context of a 5 end and pick pattern repeat, are clearly separable into 2 yarns.

286

Signed For The Company By

Joseph Lin
Laboratory Manager



Stacy Sadowy
Quality Assurance Manager

CS/03



The findings and results in this test report apply only to the specific sample(s) submitted to us by the client for testing. Unless otherwise specified, all compliance statements are simple acceptance.
Terms and Conditions: http://vartest.com/resources/terms-and-conditions/